### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **LARRY SADDLER** | ) | |
| **847 21st Street, N.E., Apt. 3** | ) | |
| **Washington, D.C. 20002** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.** |
| | ) | |
| **AMEC FOSTER WHEELER** | ) | |
| **ENVIRONMENT & INFRASTRUCTURE,** | ) | |
| **INC.** | ) | |
| **Serve: CT Corporation System** | ) | |
| **1015 15th St. NW** | ) | |
| **Suite 1000** | ) | |
| **Washington, DC 20005** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### COMPLAINT

COMES NOW, Plaintiff Larry Saddler ("Plaintiff"), by and through undersigned counsel, and for his Complaint against Defendant AMEC Foster Wheeler Environment & Infrastructure, Inc. ("Defendant") states as follows:

### Introduction

This is an action for damages arising out of personal injuries sustained by Plaintiff on September 26, 2013 when Plaintiff tripped and fell over the leg of a construction sign at the corner of Benning Road and 21st Street N.E. in Washington D.C. At the time of the fall, Mr. Saddler was walking to the bus stop and turning the corner onto Benning Road, N.E. when he suddenly tripped and fell over the leg of an unmarked, improperly and dangerously placed construction sign.  As a direct and proximate result of this unsafe condition, Mr. Saddler has suffered catastrophic physical injuries.  Among his many physical injuries resulting from this fall, Mr. Saddler broke his right femur and left elbow and has required numerous surgeries and

medical treatment including inserting a metal plate in his leg, which had to be removed after infection, replacement of the distal end of his femur bone with a prosthetic, multiple hospital stays, rehabilitation programs, and endless disruption to his daily life.

## Jurisdiction and Venue

1.      Jurisdiction in this matter is founded on diversity of citizenship and amount in controversy pursuant to 28 U.S.C. § 1332(a)(1).

2.      The matter in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and is between citizens of different states.

3.      Venue in this action properly lies in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391, insofar as a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

4.      Plaintiff Larry Saddler has previously brought suit in the Superior Court for the District of Columbia against two Defendants in connection with this incident: District of Columbia ("D.C.") and Dean-Facchina LLC ("Dean-Facchina").  That suit is continuing.

## PARTIES

5.      Plaintiff, Larry Saddler, is an adult resident of the District of Columbia residing at the address set forth above.

6.      Defendant AMEC Foster Wheeler Environment & Infrastructure, Inc. ("AMEC") is a Nevada corporation whose principal place of business is in Alpharetta, GA, and is a corporate resident of Georgia for diversity purposes. At all relevant times, AMEC Foster Wheeler Environment & Infrastructure, Inc. was and is doing business in the District of Columbia, and it was and is transacting business and carrying on regular business in the District of Columbia. At all relevant times, AMEC Foster Wheeler Environment & Infrastructure, Inc.

2

entered into a contract with the District of Columbia to provide construction management services for the H Street and Benning Road, NE Streetcar project, which included twice daily inspections of the job site to ensure that maintenance of traffic guidelines were being followed.

## Facts

7.      Upon information and belief, the District of Columbia awarded Dean-Facchina, LLC, a contract to build a streetcar line in Northeast Washington, D.C., including in the area around 21st and Benning Rd. NE.

8.      Upon information and belief, the District of Columbia awarded AMEC a contract to provide construction management services as part of the H Street and Benning Road, NE Streetcar project, including but not limited to twice daily inspections of the construction project and sites.

9.      Upon information and belief, the District of Columbia and/or Dean-Facchina, LLC was performing construction on Benning Road from to 21st to 26th Streets in order to construct the streetcar maintenance and operations facility and had erected barriers and placed signs around the construction site.

10.      Upon information and belief, AMEC was performing construction management services as part of the H Street and Benning Road, NE Streetcar project.

11.      AMEC had a duty to inspect the construction sites, the construction equipment, the constructions signs, and the streets and sidewalks in and around the streetcar construction to check for safety, hazardous conditions, and for any deviations from maintenance of traffic guidelines, to document and report such deviations to Dean-Facchina LLC and/or the District of Columbia, and to ensure that these deviations were remedied.

12.     On or about September 26, 2013, Mr. Saddler was walking to the bus stop on Benning Road, N.E., just before the northeast corner of 21st St. N.E., when he tripped and fell over a dangerously placed sign on the north sidewalk of the 2100 block of Benning Road N.E. (the "Sign").

13.     The Sign was placed upon the sidewalk facing the street rather than the oncoming pedestrians for which it was presumably intended.

14.     The Sign was situated behind and in-between two poles on the street corner thereby obscuring part of the Sign.

15.     The Sign had two skinny rods at the base protruding into the street in front of it and two other skinny rods at the base protruding behind it – taking up nearly half of the sidewalk, and thereby creating an unsafe, dangerous condition.

16.     Upon information and belief, the Sign had been placed on this corner at least 17 days prior to the incident and had been in the dangerous position it was in when Plaintiff tripped on it for at least 4 days prior to the incident.

17.     During the time the Sign was placed on the sidewalk in the dangerous position, AMEC had made multiple inspections of the site, and/or, had driven or walked past the site on numerous occasions, giving them reason to see and to fix the dangerous condition that had been created.

18.     AMEC conducted twice daily inspections of the area where Plaintiff fell and drafted reports documenting compliance with maintenance of traffic guidelines during September of 2013.

19.     Defendant AMEC knew of, or should have known of, the dangerous positioning of the Sign as a result of these daily inspection.

4

20.     After Mr. Saddler fell and suffered serious injury on September 26, 2013, an ambulance was called and Mr. Saddler was transported to Howard University Hospital with a broken right femur.

21.     Mr. Saddler's injuries have required numerous surgeries and medical attention including inserting and later removing metal plate after infection, replacement of the distal end of his femur bone with a prosthetic, multiple hospital stays, rehabilitation programs, and endless disruption to his daily life.

22.     In addition to having permanent surgical implants and other serious injuries, Plaintiff has had a long period of recovery and pain, and is expected to continue to require extensive medical treatment and ongoing therapy.

23.     All such injuries and medical treatment were proximately caused by Defendant's negligence in the failure to use reasonable care in the setup, placement, maintenance, operation, supervision, or inspection of the subject area.

24.     Since the accident, Plaintiff has also suffered emotional and other non-economic damages as a result of Defendant's negligence.

25.     After the fall, Plaintiff had substantial difficulty performing normal activities of daily living.

26.     As a result of Defendant's negligence, Plaintiff has suffered, and will continue to suffer, serious bodily and emotional injuries and damages, including physical pain, suffering, emotional distress, inconvenience, loss of the enjoyment of life, medical expenses, loss of earnings and earning capacity, and other damages.

## COUNT I – Negligence
## (AMEC)

27.    All preceding paragraphs are incorporated by reference as though fully set forth herein.

28.    At all relevant times, AMEC occupied and/or exercised dominion and control over the area where Plaintiff fell.

29.    At all relevant times, AMEC had a duty to use reasonable care to inspect the public area where Plaintiff fell for hazardous conditions, threats to public safety, and/or conformity with maintenance of traffic guidelines, to report any deviations from these guidelines, and to ensure that such deviations were remedied.

30.    The Sign dangerously positioned upon the sidewalk was facing the street rather than oncoming pedestrians, was situated behind and in-between two poles thereby obscuring part of the Sign, and had two skinny rods at the base protruding into the street in front of it and two other skinny rods at the base protruding behind it taking nearly half of the sidewalk thereby creating an unsafe condition, all in violation of established maintenance of traffic guidelines.

31.    Defendant negligently and carelessly failed to use reasonable care to inspect the area where Plaintiff fell for hazardous or dangerous conditions and/or deviations from maintenance of traffic guidelines, and to ensure that these deviations were remedied.

32.    The presence, location and positioning of the sign with the legs of the stand protruding into the path of pedestrians was a dangerous condition, improper and caused Mr. Saddler's fall.

33.    Since the sidewalk was not closed, and the sign and stand Mr. Saddler tripped over had no useful purpose on the date he fell, the sign and stand should have been removed or placed so as not to be a hazard for pedestrians using the open sidewalk.

6

34.     AMEC was responsible to inspect the project regularly to ensure proper and complete compliance with the Contract's plans, specifications and requirements, including MOT plans.

35.     The placement of the sign when Mr. Saddler fell, and not having it removed by AMEC, was improper, resulting in a dangerous condition that caused Mr. Saddler's fall.

36.     AMEC abrogated its responsibilities by not enforcing the Contract specifications ensuring a safe construction work zone for all users to navigate through.

37.     Defendant knew or, in the exercise of reasonable care, should have known, that the area where Plaintiff fell was unsafe and in a dangerous condition given, among other things, its daily inspection of the area for compliance with maintenance of traffic guidelines.

38.     Plaintiff's fall and resulting serious injuries were caused by the negligence of Defendant who failed to use reasonable care in inspecting the area where Plaintiff fell.

39.     Plaintiff's fall and resulting serious injuries were the direct and proximate result of Defendant's negligent conduct in failing to inspect the area where Plaintiff fell, to observe or report the dangerous Sign, and to remedy the dangerous condition.

40.     As a direct result of Defendant's negligence, Plaintiff has suffered substantial damages in an amount not less than $10,000,000.00, which will be proven at trial.

WHEREFORE Plaintiff demands judgment against Defendant as follows: (1) compensatory damages in the amount not less than $10,000,000.00, which amount will be proven at trial; (2) payment of all costs associated with this action; (3) pre- and post-judgment interest as permitted by law; and (4) such other and further relief as the Court deems proper.

## COUNT II - Negligence *Per Se*
## (AMEC)

41.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

42.     At all relevant times, Defendant occupied and/or exercised dominion and control over the area where Plaintiff fell.

43.     Defendant owed Plaintiff regulatory duties regarding the area where Plaintiff fell, including those regulatory duties that arose from D.C. Mun. Regs. Tit. 24.

44.     D.C. Mun. Regs. Tit. 24 § 3310.13 states that "[t]he Public Right-of-Way Occupancy Permittee shall properly maintain the occupied public space, public right-of-way, public structure, and all facilities installed as part of the Permittee's system so that the Permittee's installation does not interfere with or disrupt the operation of any equipment or facility belonging to the District or other permitted users, **or pose a danger to the public**. The Permittee shall keep all surface installations, including personalized pavers, free of ice, snow, leaves, litter, refuse and other deposits."

45.     D.C. Mun. Regs. Tit. 24 § 3315.2  states "[t]he blockage of a sidewalk, bicycle lane, or other public bicycle path shall be treated in the same manner as the closure of a lane of motor vehicle traffic by applying similar temporary traffic control practices as would be applied to the closure of a lane of motor vehicle traffic for each permit issued. The design and placement of the temporary traffic control signs, devices and roadway markings shall be in compliance with the most recent edition of the Manual on Uniform Traffic Control Devices (MUTCD)."

46.     D.C. Mun. Reg. 2000.5 provides that "No person shall occupy with, place, or leave, or cause to be placed or left on public space . . . any deposit dangerous to life and limb, without protecting and guarding that public space."

8

47.     D.C. Mun. Reg. 2001.4 provides that "No person shall occupy with, place, leave, or cause to be placed or left on public space, any obstruction to travel that is dangerous to life and limb, without protecting and guarding that public space."

48.     The aforementioned regulations are intended to promote the safety of the public and protect pedestrians, like Plaintiff, and other persons from harm when occupants are using public space. Such regulations set forth duties with which Defendants were required to comply.

49.     Defendants breached those duties and were negligent *per se* by, *inter alia*, posing a danger to the public by its dangerous placement of the Sign; by failing to maintain the Sign in a good condition as required by the Manual on Uniform Traffic Control Devices; and by permitting a dangerous obstruction to travel, the Sign, to be left and to remain in the condition it was in, making it dangerous to life and limb.

50.     As a direct and proximate result of Defendants' negligence *per se*, Plaintiff has suffered substantial damages in an amount not less than $10,000,000.00, to be proven at trial.

WHEREFORE Plaintiff demands judgment against Defendant as follows: (1) compensatory damages in the amount not less than $10,000,000.00, which amount will be proven at trial; (2) payment of all costs associated with this action; (3) pre- and post-judgment interest as permitted by law; and (4) such other and further relief as the Court deems proper.

## <u>JURY TRIAL REQUESTED</u>

Plaintiff, by counsel, respectfully requests a trial by jury on all issues.

Respectfully submitted,

**LARRY SADDLER**

**By:**_____
Jacob M. Lebowitz (DC Bar No. 483742)
Ryan C. Posey (D.C. Bar # 1000581)
3221 M Street NW
Washington, DC  20007
Telephone:  (202) 524-0123
Facsimile:  (202) 810-9009
E-mail:  jlebowitz@poseylebowitz.com
         rposey@poseylebowitz.com
*Co-Counsel for Plaintiff*