# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY SADDLER, *Plaintiff*, v. AMEC FOSTER WHEELER ENVIRONMENT & INFRASTRUCTURE, INC., *Defendant.* | Civil Action No. 16-1582 (RDM) |

## MEMORANDUM OPINION AND ORDER

In order to construct a streetcar line in northeast Washington, D.C., the District of Columbia contracted with Dean-Facchina, LLC ("Dean-Facchina") to provide general contracting services and with Defendant AMEC Foster Wheeler Environment & Infrastructure, Inc. ("AMEC") to provide construction management services. AMEC's responsibilities included, among other things, twice-daily inspections of the streetcar construction site to ensure that it was safely maintained. On September 26, 2013, Plaintiff Larry Saddler tripped and fell over a construction sign that had been placed on a sidewalk, resulting in serious injuries. Saddler filed a personal injury complaint against the District of Columbia and Dean-Facchina in D.C. Superior Court in 2015. Dkt. 1 at 2 (Compl. ¶ 4); Dkt. 4-4 at 4. Then, a year later, invoking this Court's diversity jurisdiction, he filed a separate complaint against AMEC arising from the same incident. Dkt. 1. In that complaint, Saddler alleges that AMEC failed to use reasonable care in maintaining the safety of the streetcar construction site and that its negligence caused his injuries.

AMEC now moves to dismiss the present action. Dkt. 4. It argues that, under Federal Rules of Civil Procedure 12(b)(7) and 19, Saddler has failed to join two indispensable parties—the District of Columbia and Dean-Facchina; that joining of the District of Columbia would destroy diversity jurisdiction; and that, accordingly, the Court should dismiss the action in "equity and good conscience" because the action cannot fairly "proceed among the existing parties." Fed. R. Civ. P. 19(b); Dkt. 4-1 at 8–18. In the alternative, AMEC asserts that the Court should abstain from exercising jurisdiction over this matter under the *Colorado River* doctrine. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). AMEC argues that, because the D.C. Superior Court is already exercising jurisdiction over a parallel suit involving the same operative facts, this Court should, in the interest of comity, defer to the Superior Court and decline to hear the case, or, at the very least, should stay the present case pending the outcome of the Superior Court action. Dkt. 4-1 at 18–25.

As explained below, the Court disagrees and will, accordingly, deny AMEC's motion to dismiss on both grounds.

## I. BACKGROUND

For purposes of the pending motion to dismiss, the Court will assume the truth of the following facts, which are taken from Saddler's complaint. *See Dentons US LLP v. Republic of Guinea*, 208 F. Supp. 3d 330, 334 (D.D.C. 2016) (citing *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)).

As noted above, the District of Columbia awarded Dean-Facchina, a corporate citizen of Florida and Maryland, Dkt. 4-1 at 9, a contract to build a streetcar line, and awarded AMEC, a corporate citizen of Nevada and Georgia, Dkt. 1 at 2 (Compl. ¶ 6); Dkt. 4-1 at 8–9, a contract to provide construction management services for the project, Dkt. 1 at 3 (Compl. ¶¶ 7–8). The

streetcar line was to run, in part, along Benning Road from 21st to 26th Streets, and, as Dean-Facchina worked on that segment of the line, it "erected barriers and placed signs around the construction site." Dkt. 1 at 3 (Compl. ¶ 9). AMEC's role in the project, Saddler alleges, was to inspect the construction site, equipment, and signage for "safety [or] hazardous conditions," to "document and report" any "deviations" to Dean-Facchina or the District of Columbia, and to "ensure that [any] deviations were remedied." *Id.* (Compl. ¶ 11). Similarly, AMEC was charged with monitoring the safety of the "streets and sidewalks in and around the streetcar construction," and it was required to report "any deviations from maintenance of traffic guidelines" to Dean-Facchina or the District of Columbia, and, again, to "ensure that [any] deviations were remedied." *Id.* Saddler alleges that AMEC was required to accomplish these tasks by performing "twice[-]daily inspections of the construction project and sites." *Id.* (Compl. ¶ 8).

On September 26, 2013, Saddler, a resident of the District of Columbia, was walking on the Benning Road sidewalk near the corner of Benning and 21st Street, N.E., "when he tripped and fell over a dangerously placed sign." *Id.* at 4 (Compl. ¶ 12). Saddler alleges that the "skinny rods at the base protruding" from the sign "t[ook] up nearly half of the sidewalk;" that "two poles on the street corner . . . obscur[ed]" part of the sign from view; and that the sign was "placed [on] the sidewalk facing the street" rather than facing "oncoming pedestrians." *Id.* (Compl. ¶¶ 13–15). The sign, Saddler asserts, had been in this "dangerous position" for "at least [four] days prior to" his fall, and he alleges that, during this four-day period, "AMEC had made multiple inspections of the site" but failed to remedy the situation. *Id.* (Compl. ¶¶ 16–17). Saddler claims that, as a result of the fall, he "suffered serious injury" that "required numerous

surgeries" and necessitated a "long period of recovery" and "ongoing therapy." *Id.* at 5 (Compl. ¶¶ 20–22).

"[I]n connection with this incident," Saddler brought a personal injury suit in D.C. Superior Court against the District of Columbia and Dean-Facchina in September 2015. *Id.* at 2 (Compl. ¶ 4); Dkt. 4-4 at 4. A year later, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332(a), Saddler filed the present action, asserting claims for negligence and negligence *per se* against AMEC arising from the same incident. *See* Dkt. 1. AMEC has moved to dismiss the complaint under Rule 12(b)(7), or, in the alternative, for the Court to abstain from exercising its jurisdiction under the *Colorado River* doctrine. *See* Dkt. 4-1.

## II. ANALYSIS

### A. 12(b)(7) Motion to Dismiss

AMEC first argues that the Court should dismiss Saddler's complaint because he has "failed to join indispensable parties" under Rules 12(b)(7) and 19. Dkt. 4 at 1. AMEC acknowledges that a suit between Saddler and AMEC satisfies 28 U.S.C. § 1332(a)'s diversity requirement—Saddler is a resident of the District of Columbia, AMEC is a corporate resident of Nevada and Georgia, and more than $75,000 is at stake. *See* Dkt. 4-1 at 8–9. It argues, however, that under Rule 19(a), the District of Columbia and Dean-Facchina "must be joined" as defendants, Fed. R. Civ. P. 19(a)(1), and that joinder of the District would destroy diversity jurisdiction, Dkt. 4-1 at 9. According to AMEC, this requires dismissal of the action under Rule 19(b), because the case cannot proceed with the District of Columbia as a party, yet, "in equity and good conscience," Fed. R. Civ. P. 19(b), ought not proceed among the existing parties without the District, Dkt. 4-1 at 11–12. The Court disagrees.

Rule 12(b)(7) permits a defendant to move to dismiss a complaint for "failure to join a party under Rule 19." Rule 19, in turn, "establishes a two-step procedure for determining

4

whether an action must be dismissed because of the absence of a party needed for a just adjudication." *Cherokee Nation of Okla. v. Babbitt*, 117 F.3d 1489, 1495–96 (D.C. Cir. 1997). First, the Court "must determine whether the absent party is 'necessary' to the litigation according to the factors enumerated in Rule 19(a); if so, the [C]ourt must order that the absent party be joined." *Id.* at 1496. "If a necessary party cannot be joined"—because, for example, doing so would deprive the Court of jurisdiction—the Court "must turn to the second step, examining the factors in Rule 19(b) to 'determine whether in equity and good conscience, the action should proceed among the parties before it, or should be dismissed, the absent person being regarded as indispensable.'" *Id.* (quoting Fed. R. Civ. P. 19(b)).[1] Here, the Court need not proceed to the second step of the Rule 19 analysis because AMEC's challenge fails at the first step.

As an initial matter, the Court cannot accept AMEC's premise that joining the District of Columbia as a defendant would defeat diversity jurisdiction. AMEC's argument appears to presume that the District of Columbia is itself a "citizen" of the District of Columbia, and that joinder of the District in a case brought by Saddler, who is a D.C. resident, would thus defeat diversity. *See* Dkt. 4-1 at 9 ("[T]he Government of the District of Columbia shares citizenship in the District of Columbia with Plaintiff."). It has been established for over a century, however, "that a State is not a 'citizen' for purposes of the diversity jurisdiction." *Moor v. Alameda Cty.*, 411 U.S. 693, 717 (1973). The same holds true, moreover, for the District of Columbia, *see*

---

[1] *Cherokee Nation* quotes the 1987 version of Rule 19(b). In 2007, Rule 19 was "restyl[ed]" to be "more easily understood," and the Rule's "traditional terminology" that "the absent person being . . . regarded as indispensable" was "discarded as redundant" because it was "used only to express a conclusion reached by applying the tests of Rule 19(b)." *See* Fed. R. Civ. P. 19, Advisory Committee Notes. The 2007 amendments were "intended to be stylistic only" and do not change the substance of the rule as cited in the D.C. Circuit's decision in *Cherokee Nation*. *Id.*

5

*Long v. District of Columbia*, 820 F.2d 409, 414 (D.C. Cir. 1987), which constitutes a "State[]" for purposes of § 1332, *see* 28 U.S.C. § 1332(e). As the D.C. Circuit has explained:

> The only "State" of which the District could conceivably be a citizen is the District itself; thus, the District is subject to diversity jurisdiction only if the District is a citizen of itself. We cannot subscribe to such a bizarre characterization of the District of Columbia. As we have noted, the Supreme Court has held repeatedly that the fifty states are not citizens of themselves . . . . We can think of no reason for holding that the fifty states are not citizens of themselves, but the District is a citizen of itself. The rationale underlying the Supreme Court's teaching is that a whole cannot be a citizen of the whole. This rationale applies as well to the District of Columbia as to any of the fifty states. We therefore think the conclusion inescapable that the District, like the fifty states, is not subject to diversity jurisdiction.

*Long*, 820 F.2d at 414. The District of Columbia, accordingly, is not the type of entity that is *ever* subject to § 1332, and therefore joinder of the District does not defeat diversity jurisdiction in the same sense that joinder of an individual defendant who resides in the same State as the plaintiff would. That is, joinder of the District of Columbia would not result in "litigants from the same [S]tate" appearing on "opposing sides" of the case. *See Saadeh v. Farouki*, 107 F.3d 52, 55 (D.C. Cir. 1997) (quoting *Prakash v. Am. Univ.*, 727 F.2d 1174, 1178 n.25 (D.C. Cir. 1984)).

This, of course, does not resolve the question whether the Court would have subject matter jurisdiction over the District of Columbia for purposes of the common-law torts alleged in Saddler's complaint. As to that question, the only evident source of federal jurisdiction is 28 U.S.C. § 1367, which confers "supplemental jurisdiction" on a federal court to consider "claims that are so related to claims" over which the court already has "original jurisdiction" that the supplemental claims "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). That conferral of jurisdiction, however, comes with an important caveat: In cases in which the sole source of the district court's original jurisdiction

6

is diversity of citizenship under § 1332, the court's supplemental jurisdiction will not extend to "claims by persons proposed to be joined as plaintiffs under Rule 19 . . . when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of [§] 1332." 28 U.S.C. § 1367(b).

That rule makes eminent sense; without it, litigants could easily evade "the two statutory limitations on invocation of diversity jurisdiction—the complete diversity rule and the amount in controversy." 13D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3567.2 (3d ed. 2008) ("Wright & Miller"). It is far from clear, however, how the final clause of § 1367(b) was intended to apply in a case like this one, in which the party to be joined (here, the District of Columbia) is not a citizen of *any* State for purposes of § 1332 and thus joinder would not work any obvious circumvention of the complete diversity (or amount in controversy) requirements of § 1332. In other words, joinder of the District of Columbia would not introduce a non-diverse party—thereby defeating diversity of citizenship—because the District of Columbia is not a citizen of any State.

The Court is unaware of any precedent addressing whether the joinder of a party that is not a citizen of any State (or is not the subject of a foreign state) "would be inconsistent with the jurisdictional requirements of [§] 1332," and would thus run afoul of the final clause of § 1367(b). *See Westra Constr., Inc. v. U.S. Fid. & Guar. Co.*, 546 F. Supp. 2d 194, 198 (M.D. Pa. 2008) ("Few courts have attempted to define the contours of the final requirement of § 1367(b)."). The meaning of the final clause of § 1367(b), moreover, is "far from clear;" indeed, if the clause merely meant that the claims subject to joinder under Rule 19 must satisfy all of the requirements of § 1332, "there would be no need for supplemental jurisdiction." 13D Wright & Miller § 3567.2. Because neither party has briefed this issue, and because the Court

7

must, in any event, deny AMEC's motion on other, well-settled grounds, the Court will not endeavor to define the scope of the final clause of § 1367(b) here.[2] For present purposes, it suffices for the Court to decline to embrace the first premise of AMEC's motion and to turn to the question whether the District of Columbia is, in any event, a "necessary" party within the meaning of Rule 19(a). *See Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 464 (D.C. Cir. 2017) (noting that the first "question[]" in a "Rule 19 inquiry" is whether the absent party is "necessary to the litigation").

Unlike the meaning of the final clause of § 1367(b), that question is easily answered. As the Supreme Court has explained, "[i]t has long been the rule that it is *not* necessary [under Rule 19(a)] for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990) (emphasis added); *see also Park v. Didden*, 695 F.2d 626, 631 (D.C. Cir. 1982) (Ginsburg, J.) ("An almost unbroken line of federal decisions holds that persons whose liability is joint and several may be sued separately in federal court."). In *Temple*—a case much like this one—a tort plaintiff sued a medical device company in federal district court, alleging that he sustained severe injuries when "the device's screws broke off inside [his] back." 498 U.S. at 6. Subsequently, he also sued the doctor who surgically implanted the device in his back and the hospital where the surgery was performed, but did so in state court. *Id.* The Supreme Court reversed the district court's order mandating joinder of the doctor and hospital in

---

[2] For the same reasons, the Court will not address whether principles of sovereign immunity might further frustrate efforts to join the District of Columbia to a claim brought in this Court under D.C. common law. *See, e.g.*, *Morris v. Wash. Metro. Area Transit Auth.*, 781 F.2d 218, 219–20 (D.C. Cir. 1986) ("Congress has power to legislate for the District of Columbia and to create an instrumentality that is immune from suit."); *Rieser v. District of Columbia*, 563 F.2d 462, 474–75 (D.C. Cir. 1977) (discussing the development of sovereign immunity jurisprudence as it relates to the District of Columbia); *Ibrahim v. District of Columbia*, 539 F. Supp. 2d 143, 148–49 (D.D.C. 2008) (discussing a statute by which the District of Columbia waives its sovereign immunity as to certain claims).

the federal court action, holding that it "was error to label joint tortfeasors as indispensable parties," *id.* at 7, and that "a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability," *id.* (quoting Fed. R. Civ. P. 19(a), Advisory Committee Notes). Because the doctor and hospital, as putative joint tortfeasors, were not necessary parties to the action between the plaintiff and the medical device company, the Supreme Court held that the plaintiff had failed to satisfy the "threshold requirements of Rule 19(a)," and that, accordingly, "no inquiry under Rule 19(b) [wa]s necessary." *Id.* at 8.

The same logic holds here. Saddler's suit in D.C. Superior Court alleges that the District of Columbia and Dean-Facchina are responsible for the injuries he suffered on September 26, 2013, and his suit in this Court alleges that AMEC is responsible for those same injuries. Under D.C. law, the "general rule is that [putative] joint tortfeasors" like the District of Columbia, Dean-Facchina, and AMEC are "jointly and severally liable for compensatory damages" awarded to a plaintiff, *Faison v. Nationwide Mortg. Corp.*, 839 F.2d 680, 685 (D.C. Cir. 1987) (citing *Hill v. McDonald*, 442 A.2d 133, 137 (D.C. 1982)), and, as both the Supreme Court and the D.C. Circuit have explained, tortfeasors that are allegedly jointly and severally liable for a plaintiff's injuries do not need to be sued in a single proceeding, *see Temple*, 498 U.S. at 7; *Park*, 695 F.2d at 631.

AMEC seeks to avoid this line of reasoning by recasting Saddler's tort suit as an action sounding in contract. *See* Dkt. 9 at 7 (noting that Saddler's complaint indicates that "it [wa]s AMEC's role as a construction manager that g[ave] rise to [its] duty" of care and arguing that "the scope of services AMEC was to provide as a construction manager [is] an issue of contractual interpretation . . . that cannot be resolved without both contracting parties").

9

Whether Saddler can establish that AMEC breached a duty to him that was borne out of its performance of contractual duties owed to the District of Columbia is a good question. But AMEC did not bring a Rule 12(b)(6) or Rule 56 motion to test the legal sufficiency of Saddler's theory of liability. Rather, its motion is premised on Rule 12(b)(7) alone, and nothing that the Court holds, if and when it is required to address the source and scope of any duty AMEC may have owed Saddler, will bind the District of Columbia. Indeed, the D.C. Circuit recently rejected the same argument that AMEC presses, holding that Rule 19 does not require joinder merely because a case calls for interpretation of an agreement to which a non-party is a signatory. *See Nanko Shipping*, 850 F.3d at 464–65. As the Court of Appeals explained, the non-party's right to due process is protected because it cannot be "bound by any judgment rendered in its absence," *id*. at 465, and "the requirements of Rule 19(a) are not satisfied simply because a judgment [in the pending action] might set a persuasive precedent in any potential future action," *id*. (quoting *Huber v. Taylor*, 532 F.3d 237, 250 (3d Cir. 2008)). That reasoning is dispositive here.

Accordingly, because AMEC has not demonstrated that the District of Columbia is an indispensable party that the Court "must . . . join[]" under Rule 19(a), its motion to dismiss under Rule 12(b)(7) fails.

**B.     *Colorado River* Abstention**

Alternatively, AMEC argues that the Court should abstain from exercising jurisdiction over this matter (or should at least stay proceedings) under the *Colorado River* doctrine.[3] Dkt. 4-

---

[3] For purposes of the *Colorado River* doctrine, the District of Columbia is treated as a State. *See Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 351 (D.C. Cir. 2003) ("Although the Superior Court [of the District of Columbia] is a congressionally created court and, thus, 'federal' in its creation, we have heretofore reviewed the district court's discretionary dismissal in favor of parallel proceedings in Superior Court under the standard applicable to a parallel state court proceeding.")

1 at 18–24. As the Supreme Court explained in *Colorado River*, the "[g]eneral[] . . . rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction.'" 424 U.S. at 817 (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). "Abstention from the exercise of federal jurisdiction," the Court further admonished, "is the exception, not the rule;" is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it;" and is "justified . . . only in the exceptional circumstances where [it] would clearly serve an important countervailing interest." *Id.* at 813 (internal quotation marks omitted). In short, federal courts have a "virtually unflagging obligation" to exercise their lawful jurisdiction, *id.* at 817, and they may not decline to adjudicate a suit "merely because a [s]tate court could entertain it," *id.* at 814 (internal quotation marks omitted); *see also Hoai v. Sun Ref. & Mktg. Co.*, 866 F.2d 1515, 1520 (D.C. Cir. 1989) ("[T]he Supreme Court has clearly instructed that *Colorado River* may not be invoked as a means of getting rid of cases that properly belong in federal court.").

Despite this "heavy obligation," *Colorado River* nevertheless recognized that, in certain "situations involving the contemporaneous exercise of concurrent jurisdictions . . . by state and federal courts," abstention might be proper. 424 U.S. at 817, 820. That narrow exception "rest[s] on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* at 817 (internal quotation marks and alteration omitted). In determining whether to invoke the doctrine, federal courts must consider a series of factors including the "inconvenience of the federal forum, the order in which the courts assumed jurisdiction, the desirability of avoiding piecemeal litigation, whether federal or state law controls[,] and whether the state forum will adequately protect the interests of the parties." *Handy*, 325 F.3d at 352–53 (citing *Colorado River*, 424 U.S. at 817–18). "No one

11

factor is necessarily determinative;" rather, "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colorado River*, 424 U.S. at 818–19. The decision whether to abstain "does not rest on a mechanical checklist, but on a careful balancing of the important factors," and the "weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

As a threshold matter, Saddler argues that *Colorado River* abstention is inapplicable here because, unlike every *Colorado River* case cited by AMEC, this is not a case in which both parties before the federal court are also parties to the state court action; AMEC is party here but not in the D.C. Superior Court action.[4] Because the comity and convenience interests that underlie the doctrine are not implicated when a "party is absent from a separate suit pending before another court," Saddler argues, invocation of the *Colorado River* doctrine must "require[] that [the] parallel litigation involve the *same parties* before *both* courts." Dkt. 8 at 13 (emphasis added).

There is considerable merit to Saddler's position, and, indeed, at least one decision from this district has reached the conclusion that Saddler urges. *See Lawyers Title Ins. Corp. v. Merit Title Co., LLC*, 549 F. Supp. 2d 90, 92 (D.D.C. 2008) ("[T]he *Colorado River* doctrine of

---

[4] AMEC cites a single case in its reply brief, *Brinco Mining, Ltd. v. Federal Insurance Co.*, 552 F. Supp. 1233, 1241 (D.D.C. 1982), for the proposition that the "Court may abstain from hearing a matter where concerns of duplicative litigation arise, even where the parties to the two actions are not identical." Dkt. 9 at 9. But in *Brinco*, the same plaintiff and defendant from the federal court action were also present in the action before a Canadian court. *See* 552 F. Supp. at 1234. Although AMEC is correct that there were additional defendants joined in the foreign action that were not joined in the federal court action, the more important point is that the parties before the federal court—the court that had to decide whether or not to invoke the *Colorado River* abstention doctrine—were also *both* before the foreign court. That is not the case here.

12

abstention requires that parallel litigation involve the *same parties* before both courts."). Moreover, although the D.C. Circuit has yet to address the question, a number of other circuit courts have reached similar conclusions. The Seventh Circuit, for example, has held that *Colorado River* abstention applies only if the federal and state actions are "parallel." *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001). This does not mean that the suits must be "identical," or that "the mere presence of additional parties or issues in one of the cases will . . . necessarily preclude" application of *Colorado River* abstention. *Id.* But it does require that "'substantially the same parties are litigating substantially the same issues simultaneously in two fora.'" *Id.* (quoting *Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1156 (7th Cir. 1990)). Other circuits, including the Third, Fourth, Sixth, Tenth and Eleventh Circuits, have applied the same standard. *See Ambrosia Coal & Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1330 n.21 (11th Cir. 2004) (collecting cases). Some courts, moreover, go further, holding that "[t]he pendency of a state claim based on the same general facts or subject matter as a federal claim and involving the same parties is not alone sufficient;" in addition, the cases must be so similar that "there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *See, e.g., Fru-Con Constr. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 535 (8th Cir. 2009). At a minimum, however, all of these courts agree that *Colorado River* abstention requires a "substantial" identity of the parties.

Applying that principle here, the Court agrees with Saddler that AMEC cannot clear this hurdle. The sole defendant in this action is AMEC, and AMEC is not a party to the D.C. Superior Court action. Under these circumstances, the Superior Court action cannot possibly resolve the dispute between the parties to this action. That, alone, provides sufficient basis to deny AMEC's motion. But because the D.C. Circuit has yet to resolve this threshold question,

the Court will go on to apply the *Colorado River* factors, which also tip decisively in favor of the Court exercising jurisdiction over this case.

1.   *Convenience of the Federal Forum*

The first factor asks whether "the federal forum is inconvenient for the parties involved." *Foster-El v. Beretta U.S.A. Corp.*, 163 F. Supp. 2d 67, 71 (D.D.C. 2001). In *Colorado River,* the Supreme Court concluded that "the 300-mile distance between the [federal court] and the [state] court," along with other factors, weighed in favor of abstention. 424 U.S. at 820. Here, in contrast, the physical distance between this Court and the D.C. Superior Court is closer to 300 *feet* than 300 *miles*. This factor, accordingly, does not support abstention. *See Foster-El*, 163 F. Supp. 2d at 71.

2.   *Source of Law to Be Applied*

The Court must also consider "whether federal or state law controls." *Handy*, 325 F.3d at 352. There is no dispute that Saddler's common-law tort claims are governed by D.C. law. But state or local law applies in all diversity actions,[5] and there is no reason to believe that this case is likely to raise any unusually difficult or novel questions of D.C. law; to the contrary, it is a garden-variety tort case. AMEC argues otherwise, noting that Saddler's negligence *per se* claim will "involve[] the application of certain [D.C.] public safety regulations" which "have not been considered by the [Superior Court]" in any prior case. Dkt. 4-1 at 23. Reference to regulations to establish a *per se* duty, however, is not unusual, *see, e.g.*, *Gadaire v. Orchin*, 197 F. Supp. 3d 5, 13 (D.D.C. 2016) (discussing whether "the defendant has violated a statutory duty [under the D.C. Trust Act] supporting a claim of 'negligence *per se*'"), and the fact that the specific

---

[5]  *Cf. Sheehan v. Koonz*, 102 F. Supp. 2d 1, 5 (D.D.C. 1999) ("[T]he very existence of diversity jurisdiction rests on a presumption that federal courts are competent to decide questions of state law." (internal quotation marks omitted)).

14

regulations at issue have not been applied in a prior tort case does not introduce the type of difficulty or novelty that would weigh substantially in the *Colorado River* calculus. This factor, accordingly, provides little support for abstention.

   3.   *Adequacy of State Court to Protect Rights*

*Colorado River* requires that the Court also consider "whether the state forum will adequately protect the interests of the parties." *Handy*, 325 F.3d at 352. In the present context, this factor overlaps with the threshold inquiry; as noted above, AMEC is a party only to this action and thus is not subject to the jurisdiction of the D.C. Superior Court. As the plaintiff in both actions, moreover, Saddler is a voluntary party to both the D.C. Superior Court action and this action. As such, this is not a case in which abstention would risk subjecting either party to a forum that might not adequately protect that party's interests, and it is not a case in which the failure to abstain risks forcing either party to litigate in such a forum. As a result, this factor does not weigh in favor of, or against, abstention.

   4.   *Piecemeal Litigation*

The next *Colorado River* factor focuses on "the desirability of avoiding piecemeal litigation." *Id*. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Foster-El*, 163 F. Supp. 2d at 71 (quoting *Travelers Indemnity Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990)). Here, there is some risk of duplication of efforts, but no risk that AMEC—the moving party—will be required to duplicate its efforts. To the contrary, the D.C. Superior Court action will, if anything, save work for AMEC. Because that case is substantially further along, AMEC might be able to rely on findings that the D.C. Superior Court makes that are adverse to Saddler by asserting issue preclusion. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("Issue preclusion . . . bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court

15

determination essential to the prior judgment, even if the issue recurs in the context of a different claim." (internal quotation marks omitted)). But, as a non-party to that case, AMEC need not worry that any findings that are favorable to Saddler will bind it in this action. *See id.* at 892–93 ("A person who was not a party to a suit generally has not had a full and fair opportunity to litigate the claims and issues settled in that suit," and, accordingly, the application of "issue preclusion to nonparties thus runs up against the deep-rooted historic tradition that everyone should have his own day in court." (internal quotation marks omitted)).

Moreover, to the extent this factor is intended to promote judicial efficiency, it weighs substantially against abstention. Most notably, the D.C. Superior Court action is ready for trial. If the Court were to abstain on the theory that Saddler should press his claims against AMEC in the Superior Court action, however, that court would need to postpone the trial and would need to reopen discovery and motions practice to provide AMEC with an opportunity to catch up. That would be inefficient and would substantially disrupt the Superior Court action. Accordingly, if anything, this factor weighs against abstention.

5. *Order of Jurisdiction*

Finally, the Court is required to consider "the order in which courts assumed jurisdiction." *Handy*, 325 F.3d at 352. Ordinarily, the fact that a state court proceeding was brought before the federal court action was initiated might weigh in favor of abstention. *See, e.g.*, *Atkinson v. Grindstone Capital, LLC*, 12 F. Supp. 3d 156, 163–64 (D.D.C. 2014) (determining that, because the "state court obtained jurisdiction well in advance of [the federal court]" and had "overseen the progress of the litigation," the "scale [wa]s tipped in favor of abstention"). In *Colorado River* itself, for example, the Supreme Court relied on the fact that little had occurred in the federal district court before the abstention motion was filed. 424 U.S. at 820 & n.25. Presumably, this conclusion was premised on the notion that little would be lost by

requiring the federal court to defer to the state court proceeding; that is, abstention would not disrupt an ongoing federal proceeding in which the court and the parties had already invested significant time and effort.

In this case, however, AMEC urges one of two courses, neither of which would "conserv[e] judicial resources" or promote the "comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817. First, the Court might dismiss this action and leave it to Saddler to seek to join AMEC in the D.C. Superior Court action. But, if this Court were to do so, it would do far more than disrupt this proceeding (which concededly is in its initial phase); it would, as explained above, risk disrupting the Superior Court proceeding, which is set for trial. Nor would judicial economy be served by dismissing this action, only to invite Saddler to bring an entirely new (and independent) action against AMEC in Superior Court. Second, the Court might simply stay this case pending resolution of the Superior Court action. It is unclear, however, what end a stay would serve. AMEC would still be subject to suit before this Court; the suit would merely be delayed. Such a delay, moreover, would likely work a substantial hardship on Saddler, who represents to the Court that he "is currently suffering from numerous serious health issues, including cancer." Dkt. 8 at 15. Any difficulty that might arise regarding the availability of counsel and witnesses, moreover, can easily be addressed through the Court's management of the pending proceeding.

The Supreme Court has reminded lower courts that "[t]his factor, as with the other *Colorado River* factors, is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H.*, 460 U.S. at 21. That admonition is particularly apt here, where dismissal of this action would likely disrupt the Superior Court action, and where a stay of this action would not "secure the just, speedy, and inexpensive determination" of Saddler's

17

claims, Fed. R. Civ. P. 1.  Aware of its "heavy obligation to exercise" its lawful jurisdiction, *Colorado River*, 424 U.S. at 820, the Court concludes that AMEC has failed to make the extraordinary showing necessary to obtain dismissal or a stay under the *Colorado River* doctrine.

## CONCLUSION

For the foregoing reasons, AMEC's motion to dismiss, Dkt. 4, is hereby **DENIED**. AMEC is hereby **ORDERED** to answer Saddler's complaint on or before June 16, 2017.

    **SO ORDERED**.


                                             /s/ Randolph D. Moss
                                            RANDOLPH D. MOSS
                                            United States District Judge

Date:  May 26, 2017